UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Brian Zackowski,
        Claimant

        v.                                    Case No. 17-cv-709-SM
                                              Opinion No. 2018 DNH 184
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration,
        Defendant


                            **O R D E R**


        Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), claimant,

Brian Zackowski, moves to reverse or vacate the Acting

Commissioner's decision denying his application for Disability

Insurance Benefits under Title II of the Social Security Act

(the "Act"), 42 U.S.C. § 423, and Supplemental Security Income

Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c).

The Acting Commissioner objects and moves for an order affirming

her decision.


        For the reasons discussed below, claimant's motion is

denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I. Procedural History.

In 2012, Zackowski filed an application for Disability Insurance Benefits, alleging that he had been unable to work since December 28, 2010, due to a spine injury and depression. Administrative Record ("Admin. Rec.") at 155, 159. That application was denied (Admin. Rec. at 74), and claimant requested a hearing before an Administrative Law Judge ("ALJ") (Admin. Rec. at 87). On October 31, 2013, Zackowski appeared without counsel before an ALJ, along with a vocational expert, who considered claimant's application de novo. Admin. Rec. at 23-71. Two weeks later, the ALJ issued his written decision, concluding that Zackowski was not disabled, as that term is defined in the Act, at any time prior to the date of his decision. Id. at 10-22.

Zackowski sought review of the ALJ's decision by the Appeals Council. Admin. Rec. at 9. By notice dated June 24, 2015, the Appeals Council denied Zackowski's request for review. Admin. Rec. at 1-4. Accordingly, the ALJ's denial of Zackowski's application for benefits became the final decision of the Acting Commissioner, subject to judicial review. Id. at 1.

Zackowski then filed for federal district court review of the Commissioner's decision.  <u>See</u> Admin. Rec. at 393-394. Prior to the court's review, however, the Commissioner, through her attorney, assented to Zackowski's motion to remand the decision for further proceedings, under 42 U.S.C. § 405(g).  On June 2, 2016, the Appeals Council vacated the ALJ's earlier decision, and remanded the case to the ALJ for further consideration and evaluation of the treating source opinions in the record.[1]

On July 11, 2017, the ALJ held a second hearing at which Zackowski, his attorney, and a vocational expert appeared. Admin. Rec. at 344-384.  At the hearing, plaintiff amended his alleged onset date of disability to February 6, 2012.  Admin. Rec. at 352.  On September 15, 2017, the ALJ issued his written decision, concluding that Zackowski was not disabled, as that term is defined in the Act, at any time prior to the date of the decision.  <u>Id</u>. at 326-337.  Zackowski did not file any written exceptions to the ALJ's decision with the Appeals Council, and, the ALJ's decision thus became the final decision of the Commissioner.

---

[1]    On March 20, 2015, Zackowski filed a separate application for Supplemental Security Income ("SSI").  <u>See</u> Admin. Rec. at 564.  That application was consolidated with claimant's application for Disability Insurance Benefits on remand.

Zackowski subsequently filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence. Zackowski then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 7). In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 9). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 10), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g),

1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health &
Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." Consolidated
Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something
less than a preponderance of the evidence, so the possibility of
drawing two inconsistent conclusions from the evidence does not
prevent an administrative agency's finding from being supported
by substantial evidence.  Consolo v. Federal Maritime Comm'n.,
383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402
U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

        An individual seeking SSI and DIB benefits is disabled
under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The
Act places a heavy initial burden on the claimant to establish
the existence of a disabling impairment.  See Bowen v. Yuckert,
482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health &
Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that

burden, the claimant must prove, by a preponderance of the
evidence, that his impairment prevents him from performing his
former type of work.  See Gray v. Heckler, 760 F.2d 369, 371
(1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11
(D. Mass. 1982).  If the claimant demonstrates an inability to
perform his previous work, the burden shifts to the Commissioner
to show that there are other jobs in the national economy that
he can perform, in light of his age, education, and prior work
experience.  See Vazquez v. Secretary of Health & Human
Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§
404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,
6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if
his:

    physical or mental impairment or impairments are of
    such severity that he is not only unable to do his

previous work but cannot, considering his age,
education, and work experience, engage in any other
kind of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's

motion to reverse and the Acting Commissioner's motion to affirm

her decision.


## Background - The ALJ's Findings

In concluding that Zackowski was not disabled within the

meaning of the Act, the ALJ properly employed the mandatory

five-step sequential evaluation process described in 20 C.F.R.

§§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540

U.S. 20, 24 (2003).  Accordingly, the ALJ first determined that

Zackowski had not been engaged in substantial gainful employment

at any time relevant to the decision.  Admin. Rec. at 328.

Next, he concluded that Zackowski suffers from the following

severe impairment: "facet disease of the lumbar spine."  Id. at

329.  The ALJ also considered Zackowski's "essential tremor

affecting his left upper extremity" and his adjustment disorder

with depressed mood, and determined that neither impairment had

"more than minimal effect on his ability to perform basic work functions," and therefore were not severe.  Id. at 331-332.  The ALJ then determined that Zackowski's impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Id. at 332.  Zackowski does not challenge any of those findings.

Next, the ALJ concluded that Zackowski retained the residual functional capacity ("RFC") to perform the exertional demands of light work, as defined in 20 CFR 404.1567(b) and 416.967(b), "except he is limited from standing, walking or sitting for more than 30 minutes at one time and for more than 4 hours total during an 8-hour work day."  Admin. Rec. at 333. The ALJ further noted that claimant can "occasionally stoop, crouch, balance, kneel and climb stairs," "occasionally push, pull and work overhead," and "cannot climb ladders/ropes or scaffolds." Id.  In light of those restrictions, the ALJ concluded that claimant was not capable of returning to his prior job.  Id. at 335.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, and the testimony of the vocational expert at the

October 31, 2013, hearing, the ALJ concluded that "there are jobs that exist in significant numbers that the claimant can perform." Admin. Rec. at 336. The ALJ then concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

## Discussion

Claimant challenges the ALJ's decision, asserting that the ALJ erred in: (i) evaluating the opinion evidence in the record; (ii) assessing claimant's testimony regarding his symptoms and limitations; and (iii) failing to incorporate all non-exertional limitations from his RFC findings into the hypothetical questions posed to the vocational expert.

### I.   Opinion Evidence of Record

Claimant first argues that the ALJ's evaluation of the opinion evidence in the record was erroneous. More specifically, Zackowski takes issue with the ALJ's reliance on the September 27, 2012, assessment of reviewing state agency consultant Dr. Hugh Fairley, and the January, 2014, opinion of consultative examiner Dr. Peter Loeser. Instead, says Zackowski, the ALJ should have relied upon the November, 2015, opinion of non-examining physician Dr. Jonathan Jaffe, and the February, 2012, functional capacity assessment of Brent Meserve

(which, Zackowski argues, the ALJ was specifically directed to
evaluate upon remand), as well as the opinions of claimant's
treating physicians, Dr. Robert McLellan and Dr. David Coffey.

A. Opinions of Drs. Fairley and Loeser

Zackowski does not clearly articulate why the ALJ's
reliance on the opinions of Drs. Fairley and Loeser was
problematic, instead arguing that the ALJ should have relied on
other opinion evidence in the record.  With respect to the
opinion of Dr. Fairley, Zackowski does point out that the
opinion was issued approximately five year before the ALJ's
decision.  So, to the extent Zackowski is arguing that the ALJ
should not have relied on Dr. Fairley's opinion because it was
based on a partial record (and, again, whether Zackowski is, in
fact, making that argument is not clear from his briefing, as he
cites no authority or any record evidence to support that
position), that fact alone would not preclude the ALJ from
relying on Dr. Fairley's assessment.  As the court has
previously stated:

> It can indeed be reversible error for an administrative
> law judge to rely on an RFC opinion of a non-examining
> consultant when the consultant has not examined the
> full medical record." Strout v. Astrue, Civil No. 08-
> 181-B-W, 2009 WL 214576, at *8 (D. Me. Jan. 28, 2009)
> (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir.
> 1994)).  However, an ALJ may rely on such an opinion
> where the medical evidence post-dating the reviewer's
> assessment does not establish any greater limitations,

see id. at *8-9, or where the medical reports of
claimant's treating providers are arguably consistent
with, or at least not "clearly inconsistent" with, the
reviewer's assessment. See Torres v. Comm'r of Social
Security, Civil No. 04-2309, 2005 WL 2148321, at *1
(D.P.R. Sept. 6, 2005) (upholding ALJ's reliance on RFC
assessment of non-examining reviewer where medical
records of treating providers were not "in stark
disaccord" with the RFC assessment). See also McCuller
v. Barnhart, No. 02-30771, 2003 WL 21954208, at *4 n.5
(5th Cir. 2003) (holding ALJ did not err in relying on
non-examining source's opinion that was based on an
incomplete record where he independently considered
medical records dated after the non-examining source's
report).

Ferland v. Astrue, No. 11-CV-123-SM, 2011 WL 5199989, at *4
(D.N.H. Oct. 31, 2011).

Here, the ALJ reviewed the entirety of Zackowski's medical
records, including records post-dating Dr. Fairley's 2012
opinion, and determined that Dr. Fairley's opinion was
"consistent with the claimant's varied daily activities as
reported in his Function Report and as documented in his various
medical records." Admin. Rec. at 335. The record supports that
conclusion. See, e.g., Admin. Rec. at 608 (Apr. 7, 2016,
assessment of Dr. McLennan stating, "I see no significant change
in his exam from multiple exams in the past"); id. at 605(July
30, 2015, assessment of Dr. McLennan stating same). And, as the
Acting Commissioner points out, Zackowski points to no evidence
in the record that suggests a sustained worsening of his

impairment following Dr. Fairley's September, 2012, review of Zackowski's medical records.  Put differently, Zackowski fails to point to any medical evidence after September, 2012, that establishes "greater limitations" than those assessed by Dr. Fairley.  Ferland, 2011 WL 5199989, at *4.  Accordingly, the ALJ did not err in relying on Dr. Fairley's report in his RFC analysis.

With respect to the ALJ's reliance on Dr. Loeser's January, 2014, and October, 2015, opinions, Zackowksi asserts that the ALJ gave the opinions significant weight.  However, he does not appear to argue that the ALJ erred in doing so.  Without more, the court can find no error in the weight given by the ALJ to the opinions of Dr. Loeser.

B. Opinion of Dr. Jaffe

Zackowski argues that the ALJ erroneously did not address the November, 2015, opinion of non-examining physician Dr. Jonathan Jaffe.  After reviewing claimant's medical records, Dr. Jaffee opined that he was capable of occasionally lifting or carrying up to 10 pounds; standing or walking up to four hours; sitting for a total of six hours (in an eight-hour work day); could never climb ladders, ropes or scaffolds; and had limited manipulative limitations with respect to reaching and handling. Thus, the majority of Dr. Jaffe's opinion is consistent with the

ALJ's RFC, except Jaffe's lifting limitation is 10 pounds, not 20 pounds.

Zackowski correctly contends that ALJ did not reference Dr. Jaffe's opinion in his order. However, the ALJ did expressly indicate that he carefully considered "all the evidence," and "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." N.L.R.B. v. Beverly Enterprises-Massachusetts, Inc., 174 F.3d 13, 26 (1st Cir. 1999). Dr. Jaffe is not one of claimant's treating physicians. Therefore, the regulations do not require that the ALJ give "good reasons" for the weight ascribed to Dr. Jaffe's opinion. 20 C.F.R. § 416.927 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") (emphasis added).

However, even assuming the ALJ erred by failing to address Dr. Jaffe's opinion in his order, Zackowski's argument is unpersuasive, because he fails to sufficiently demonstrate that further consideration of Dr. Jaffe's opinion would likely change the outcome. As the Commissioner points out, Dr. Jaffe's opinion "only bolsters a finding that [claimant] was not disabled." Def.'s Mem. In Supp. Of Mot. to Affirm at 7.

As discussed, the majority of Dr. Jaffe's opinion is consistent with the RFC, with the exception of the lifting and carrying limitations. And, Zackowski offers no explanation as to how those lifting and carrying limitations would alter the vocational analysis, and result in a finding of disability. The record suggests the opposite: based on Dr. Jaffe's opinion, the disability adjudicator/examiner determined that Zackowski was capable of "sedentary work," and that: "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education and RFC." Admin. Rec. at 431 (emphasis added). In other words, even if the ALJ had adopted Dr. Jaffe's RFC in its entirety, that would not alter or impact the ALJ's conclusion that claimant was not disabled. Claimant therefore fails to demonstrate that remand is warranted on that basis.

C. Meserve Functional Capacity Assessment

Zackowski further argues that the ALJ erred by giving "limited weight" to the February, 2012, Functional Capacity Assessment completed by Brent Meserve, which the ALJ was specifically directed to evaluate upon remand. Claimant contends that the ALJ's reasoning ignores the objective testing that was the basis for Meserve's assessment, and that the ALJ

fails to adequately identify inconsistencies between Meserve's assessment and the testing results.

On February 6, 2012, at the requests of claimant's treating physician, Dr. Robert McClellan, Brent Meserve performed a Function Capacity Evaluation of the claimant. Admin. Rec. at 250. Dr. McClennan asked Meserve to evaluate Zackowski's work capacity, including his level of physical effort, whether his reports of pain and disability were reliable, and what physical demand level should be used for employment planning purposes. Admin. Rec. at 251. Merserve reported the "presence of near full levels of physical effort on Mr. Zackowski's behalf." Id. He also reported the "presence of minor inconsistenc[ies] to the reliability and accuracy of Mr. Zackowski's reports of pain and disability," based on his accuracy with "a few of his physical tolerance estimates," as well as his rating of his ability to perform work tasks (Zackowski rated himself as "sedentary," "but actually performed activities during physical testing in the light to medium range.") Id. Meserve concluded, based on the results of his testing, that Zackowsi could tolerate "light physical demand level work into the medium range with occasional lifting floor to knuckle 33 pounds, knuckle to shoulder 28 pounds and shoulder to overhead 33 pounds," on a part-time

basis, four hours per day, five days a week.  Admin. Rec. at
252–253.

The ALJ stated the following, concerning Meserve's
assessment:

> I have considered the specific limitations cited in
> the February 2012 functional capacity assessment.
> This assessment provides no objective basis for the
> lifting and stooping limitations opined other than the
> claimant's subjective complaints.  However, as
> described above, there is strong evidence in this case
> from multiple sources to indicate that his complaints
> are overstated.  Further, the limitations assessed in
> February 2012 are inconsistent with the claimant's
> functioning even during testing as where the claimant
> sat uninterrupted for 26 minutes during testing and
> for almost two hours during the [four]-hour
> examination.  I also note, incidentally, that the
> claimant sat for even longer uninterrupted period
> during his administrative hearing.  For these reasons,
> I have afforded only limited weight to the February
> 2012 functional capacity opinion.

Admin. Rec. at 334–335 (internal citations omitted).

Claimant's criticism of Meserve's assessment is

unpersuasive.  The ALJ adequately explained his reasons for

discounting Meserve's assessment, and the record supports his

findings.  See, e.g., Admin Rec. at 311 (Jan. 17, 2014,

examination notes from Dr. Peter Loeser, stating: "The patient

does walk with his torso flexed at the hips to about 20 degrees

when demonstrating his ability to walk, but this was not the

case when the patient departed from the examination room

following the conclusion of the visit," and "Though the patient

states these symptoms are having a significant impact on overall function, there is insufficient evidence to fully support this conclusion."); Admin. Rec. at 598-600 (Apr. 17, 2014, examination notes from Dr. Vincent Codispoti, stating: "I suspect a non-organic component based on some positive Waddell's signs on exam (overreaction, tenderness)."); Admin. Rec. at 650-651 (Feb. 18, 2016, examination notes from Dr. Lawrence Rush, stating: "He has also been diagnosed with what has felt to have been facet syndrome, although it is hard for me to believe that this would cause the degree of disability that he is reporting."); Admin. Rec. at 672-674 (Jan. 30, 2017, appointment notes from Dr. Rush from claimant's visit to "discuss disability paperwork." Rush also expressed some reservation regarding claimant's disability forms: "This continues to be a very difficult situation. I am going to refer him to a local pain management specialist as we really need to get further information on this gentleman. . . He had also given me something from the New Hampshire Fish and Game to let him use a crossbow, but on the form it said permanent[ly] disabled and I cannot say this."); Admin. Rec. at 711-714 (Feb. 27, 2017 appointment notes from neurologist Dr. Christopher Martino, noting inconsistencies in claimant's examination, and stating: "Some functional elements on examination with times when the tremor is present[, and] times when the tremor is not present.

There are also times when he does finger-nose with ataxia and accomplishes finger-nose without ataxia. The variation and inconsistencies on examination suggest a functional overlay.") (emphasis added). Moreover, Meserve's assessment itself notes the limitations of its reliability, stating: "It needs to be remembered that the evaluation occurs over a relatively short period of time and is a snapshot of the person's abilities." Admin. Rec. at 252.

Second, the ALJ's RFC limitations were generally consistent with Meserve's assessment. Indeed, the ALJ took note of claimant's performance during Meserve's assessment in his own analysis, stating that the RFC was "consistent with the claimant's actual performance on testing in February 2012 when he lift[ed] in excess of 25 pounds and sat for a total of nearly [half] of his testing sessions." Admin. Rec. at 335. For these reasons, claimant's arguments concerning the ALJ's treatment of the Meserve assessment are unpersuasive.

D. Opinions of Dr. McLellan and Dr. Coffey

Zackowski next argues that the ALJ erred by giving little weight to the opinion of his treating physicians, Dr. McLellan and Dr. David Coffey. According to Zackowski, the ALJ's findings regarding the lack of support for those opinions erroneously ignores the Meserve assessment.

"If the ALJ does not afford controlling weight to the opinion of a treating source, 'the ALJ must give good reasons for the weight afforded that source,' which means that 'the ALJ's order must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight.'" Nelson v. Colvin, No. 15-CV-37-SM, 2016 WL 1255664, at *5 (D.N.H. Mar. 30, 2016) (quoting Eley v. Colvin, No. 14-CV-165-JL, 2015 WL 1806788, at *2 (D.N.H. Apr. 21, 2015) (further quotations omitted). As the court has determined, the ALJ's treatment of the Meserve assessment was supported by substantial evidence. The reasons given by the ALJ in his decision for discounting the opinions of Dr. McLellan and Dr. Coffey are specific, and well-supported by the evidence in the case record. See Admin. Rec. at 334-335 (citing Admin. Rec. at 597, 600, 713, 606). Accordingly, it cannot be said that the ALJ erred by declining to give the opinions of Dr. McLellan and Dr. Coffey controlling weight.

II.  ALJ's Evaluation of Claimant's Testimony

Zackowski next argues that the ALJ's evaluation of his testimony regarding his symptoms is erroneous and unsupported by

substantial evidence.  According to Zackowski, the ALJ's
findings regarding inconsistencies between claimant's testimony
and his treatment records do not constitute substantial evidence
to support the ALJ's evaluation, because they are limited
portions of the lengthy record.  Zackowski also takes issue with
the ALJ's reliance on his function reports and activities of
daily living because they largely pre-date claimant's first
hearing before the ALJ in 2014.  He more generally argues that
the ALJ should not have relied upon his activities of daily
living because they have a limited correlation with his capacity
to maintain full time employment.

     Neither argument is persuasive.  First, the ALJ's decision
makes evident that he comprehensively reviewed the entirety of
claimant's extensive medical record.  See Admin. Rec. at 329-
332.  The ALJ's finding concerning the inconsistency of
claimant's statements with the medical record is well-supported
not only by the evidence cited by the ALJ in his decision, but
by substantial additional medical evidence in the record as
well.  See Admin. Rec. at 333-334; see also Admin. Rec. at 627,
637, 650-51, 652-655, 666, 670.[2]

_____

[2]     The court also notes multiple instances in the medical
record of claimant's noncompliance with or lack of interest in
treatment for the pain he purports to be suffering, "[i]n accord
with the common sense notion that a person who does not follow a

Moreover, the ALJ's reliance on Zackowski's activities of daily living in assessing his statements concerning the intensity and persistence of his symptoms was not error.  The question was recently addressed by our court of appeals in Coskery v. Berryhill, 892 F.3d 1, 7 (2018), where claimant argued, in part, "that his ability to perform household chores, care for a dog, shop for groceries, and engage in other daily activities does not necessarily demonstrate that he is able to perform 'light work.'"  The court disagreed, stating that Social Security Ruling 16-3p "expressly requires that the ALJ consider an applicant's '[d]aily activities' to 'evaluate the intensity, persistence, and limiting effects of an individual's symptoms.'" Coskery, 892 F.3d at 7 (quoting 82 Fed. Reg. at 494465). Therefore, an ALJ can not "be said to have acted in contravention of the requirements of SSR 16-3p in considering the evidence of [claimant's] daily activities."  Id.  The court further noted that it was not unreasonable for the ALJ to infer "from what the record showed about Coskery's ability to engage in these types of daily activities, that Coskery could perform light work," and the ALJ had not relied solely on the evidence

_____

course of treatment for pain may not be suffering from that pain as intensely as the person claims." Coskery v. Berryhill, 892 F.3d 1, 6 (2018).  See, e.g., Admin. Rec. at 302, 598-599, 601-602, 603-604, 647, 656, 659.

of Coskery's daily activities in finding that he had the
capacity to perform light work.  Id.

So too, here.  The record indicates that Zackowski serves
as a primary caregiver to his young children (admin. rec. at
255, 283, 621, 637, 683, 728), drives (id. at 184, 615, 768),
prepares meals (id. at 183, 768), performs household chores (id.
at 255, 271, 768), grocery shops (id. at 184, 271), walks at
least a mile daily (id. at 654), and uses a snowblower (id. at
271).  It was not unreasonable for the ALJ to note Zackowski's
ability to engage in those activities when considering
claimant's statements regarding the intensity, persistence and
limiting effect of his symptoms.  And, the ALJ did not solely
rely upon Zackowski's daily activities in making his
determination; he also referred to claimant's records, medical
opinions, and claimant's own inconsistent statements and
testimony.

In sum, the ALJ did not err in evaluating claimant's
testimony.

**III. Questioning of the Vocational Expert**

Finally, Zackowski's argues that the ALJ's hypothetical
questioning of the vocational expert at the hearing failed to
incorporate all of the non-exertional limitations from the ALJ's

RFC findings, specifically the 30-minute increment limitation.
Therefore, says Zackowski, the ALJ's RFC findings are not
consistent with the hypothetical questioning of the vocational
expert, and with claimant's ability to sustain employment on a
full-time basis.

At the hearing, the ALJ asked the vocational expert the
following hypothetical:

> Q:   And would you first please assume an ability to
> perform a range of light exertion work, maybe lifting
> occasionally up to 20 pounds, and frequently 10
> pounds, with standing and walking for each – sitting
> standing, and walking each for up to four hours per
> workday in increments of 30 minutes.  In terms of
> postural activities – let me see something.  Would you
> please assume occasional stooping, crouching with no
> crawling; no climbing of ladders, or ropes, or
> scaffolds; and only occasional climbing of ramps and
> stairs; and with frequent balancing; only occasional
> pushing and pulling; and only occasional overhead
> work.
>
> Given that hypothetical I can already eliminate the
> past work, would you assume an individual with the
> same vocational factors as the claimant and by that I
> mean the same age, education, and past work as the
> claimant and the hypothetical I just set forth above.
> Are there any jobs such an individual could perform in
> the national or regional economies?

Admin. Rec. at 66.  As set forth above, the RFC assessed by the
ALJ is as follows:

> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)

and 416.967(b) except he is limited from standing, walking or sitting <u>for more than 30 minutes at one time</u> and for more than 4 hours total during an 8-hour workday. He can occasionally stoop, crouch, balance, kneel and climb stairs. He can occasionally push, pull, and work overhead. He cannot climb ladders/ropes or scaffolds.

Admin. Rec. at 333. As the Acting Commissioner points out, the words may differ, but the substance is identical. Zackowki's argument to the contrary is not persuasive.


### Conclusion

This court's review of the ALJ's decision is both limited and deferential. The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>. Such is the nature of judicial review of disability benefit determinations. <u>See, e.g.</u>, <u>Tsarelka v. Secretary of Health & Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record

arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court necessarily concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of her decision.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 9) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

September 11, 2018

cc:  D. Lance Tillinghast, Esq.
     Terry L. Ollila, Esq.